RCVD - USDC - CHAS, SC
2026 SEP 10 PM3:20

# UNITED STATES DISTRICT COURT OF SOUTH CAROLINA

TRACY LYNN SMITH, plaintiff, pro se

v.

Karl HALL, an individual,
Miriam Klinger, an individual,
Jim Wolf, an Individual,
JOHN DOES 1–10, individuals and entities presently unknown,
Defendants.

Civil Action No.: 2:26-cv-4004-DCN-MGB *Previously* 2:2026cv00179

COMPLAINT FOR:
VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1962(c) AND;
DECLARATORY JUDGMENT — FRAUDULENT INSTRUMENTS VOID AB INITIO;
VIOLATIONS OF THE CLEAN WATER ACT, 33 U.S.C. § 1344;
VIOLATIONS OF THE RIVERS AND HARBORS ACT, 33 U.S.C. § 403;
FRAUD AND FRAUDULENT RECORDING OF PUBLIC INSTRUMENTS — S.C. CODE § 30-9-30; VIOLATIONS OF THE CONTRACT CLAUSE, U.S. CONST. ART. I, § 10; BREACH OF FIDUCIARY DUTY HONEST SERVICES FRAUD ; CIVIL CONSPIRACY; QUIET TITLE AND DECLARATORY JUDGMENT — PUBLIC ROAD ACCESS RIGHTS; AND INJUNCTIVE RELIEF.

## Foreword and Note to the Honorable United States District Court

I, Plaintiff pro, se Tracy Lynn Smith respectfully ask this Honorable US District Court of South Carolina to note that Defendants Hall, Klinger,[1] et al with calculated predatory, retaliatory intent to harm the Smith estate, obstruct justice, and avoid personal jurisdiction have filed a false frivolous lien against the Smith estate knowing full well that the documents Hall and Wolf have attested to and filed on public record relied on to file this frivolous lien are intentionally false, deceptive, and a violation of the public trust. The Honorable Court should note that I previously

[1] Plaintiff's good faith belief is that Hall, Klinger, et al are loyal recruits of the Zender, Parks, Webb and their ParksIslandMajority which since as least May 1, 1990 have harbored predatory intent against the grand waterfront Smith Estate and acted on this intent using PIPPOA as their vehicle and cudgel against Smiths and their home.

filed a complaint *Smith v. Zender, et al*, 2:2026cv00179 naming Hall, Klinger, et al against defendants which was dismissed voluntarily without prejudice (as I had been deceived of my standing in the matter by defendants). Unknown to me at the time was that the long time President of the purported non-profit PIPPOA Karl Hall and the treasurer Mellie Klinger (also named as defendants in my initial complaint), rather than responding to my complaint and the order of the Honorable Mary Gordon Baker I provided them, instead initiated the filing of a frivolous retaliatory lien on our residence at 4351 Park Island Road while my complaint was still in front of the Honorable US District Court. It is abundantly evident that **Defendants are intent on filing false deceptive Bylaws and other documents on public record to deceive homeowners and prospective homeowners along Park Island Road falsely asserting in these falsified Bylaws that three meetings and in person voting is required to change these Bylaws but with clear intent (and no explanation of their intent) to defy these public attestations. <u>This is an affront to the public recording system, to homeowners, and to prospective purchasers of the Smith Estate.</u>**[2]

I now refile my complaint asserting the same facts and claims as my original complaint but adding claims addressing this retaliation and asserting defendants' retaliatory action is yet another overt predicate act furthering the pattern of racketeering alleged in my initial complaint violating 18 U.S.C. § 1512 and § 1513 in their attempts to evade personal jurisdiction and ignore the order of the Honorable Mary Gordon Baker I provided them with my prior complaint. I assert this lien is yet another false filing on public record, directly involves the substance of my initial complaint, was filed to retaliate, evade personal jurisdiction, obstruct justice, and indeed is itself another predicate act under Federal Civil RICO law.

I submit this complaint as a Notice Pleading in contrast to my previous complaint which was fashioned as a Fact Pleading and criticized by the Honorable Judge Baker as convoluted. I will hand deliver dozens of pages of evidence, exhibits, and a reasonably concise notarized affidavit in the coming days to address any facts omitted in this initial notice pleading as the facts of this case are moderately complex and span several decades.

---

[2] **The Honorable Court should indeed consider how on earth I am supposed to disclose these facts to prospective purchasers? Indeed I believe defendants know they are inflicting this dilemma on residents who wish to sell and are using this to purposely diminish the value of properties including the grand Smith estate.**

**Given that PIPPOA does not have an actual physical address for service, and given that defendants have shown themselves to be uncooperative and unwilling to waive service,** I request the honorable court issue summons to be served on Miriam Klinger and Karl Hall who act as the Treasurer and President respectively of the purported "non-profit" and are believed instrumental in the filing of the lien against the Smith estate while ignoring the order of the Honorable Mary Gordon Baker I provided them along with the summons and complaint in the previous case.

**Plaintiff's Unilateral Consent to Magistrate Judge Jurisdiction**

I, Plaintiff, pro se, Tracy Lynn Smith formally unilaterally consent to magistrate jurisdiction over ALL proceedings including any TRO or injunction and request assignment to the same judicial officers as *Smith v. Zender*, 2:2026cv00179, for sake of expediency and continuity.[3] **I assert this Case Is Especially Appropriate for a Federal Magistrate** on the grounds that:

- Key evidence is almost entirely **documentary** (recorded instruments, Bylaws, covenants, financial records, the retaliatory lien itself)
- The RICO pattern is sufficiently established by documents (many recorded on public record) alone; and previously undisputed by Webb or Wolf in their response to my previous complaint where they conceded they had deceived me of PIPPOA membership.
- The Retaliatory Lien is itself a document recorded on the public record. Plaintiff's good faith requests to waive service are matters of written record to the purported non-profit PIPPOA.
- Environmental devastation is clearly discernible through public maps and photographs and videos of Smiths marsh and collapse of Schanne's bluff.
- 84 year old Widow Billie Jean Sutton Smith and Son's (as well as prospective purchasers) plight warrant prompt judicial attention to these long standing offenses and threats to the multi-million dollar Smith estate, sanctity of public records, and preservation of the wonderful ecology on the Smith estate and along Park Island Road.

[3] **A. Statutory Authority** is believed in 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Local Civ. R. 73.02(B)(1) D.S.C.

Defendants have repeatedly ghosted and stonewalled my attempts to obtain explanation of their repeated defiance of the recorded Bylaws and continued damming and diversion of old house creek as they construct Parks circle.

Treasurer Klinger has asserted that mere recording of bylaws makes bylaws enforceable even as she defies the clear text of these bylaws which I presented her (in email) alongside meeting minutes.

PIPPOA has no legitimate address for service. Long time President Hall and long time treasurer now Registered agent Webb (whose houses are next to each other in the Lybrand subdivision which was established on low lying land along Old House Creek and across the road from Smiths 8 acre estate which was constructed on the much larger McCleod creek and established a decade prior to the Lybrand subdivision) have refused to answer basic questions regarding PIPPOA operations financial information and the damming of Old House Creek.

Wolf asserts those controlling PIPPOA have no obligation to even disclose the existence of clandestine PIPPOA board meetings. PIPPOA is believed to be merely a front for their secret and online board meetings and establishing the appearance of standing and venue enabling the racketeering and association in fact known as the ParkIslandMajority@gmail.com to achieve their despicable ill-gotten gains and grotesque self-aggrandizement under color of state law. Indeed such offensive, oppressive, cruel conduct is contagious and illicitly capitalized on by Parks and Hall and their cronies. Smiths don't fit in to this allegedly "harmonious" conduct, as we are not haters – just honest hardworking Smiths – and truly saddened by the vile, deceptive, predatory conduct of our so-called "neighbors".

**PRELIMINARY STATEMENT OF FACTS**

I, Plaintiff, pro se respectfully ask this Honorable United States District Court for the District of South Carolina in Charleston South Carolina to recognize that instead of agreeing to accept my reasonable request for Hall, Webb, Klinger, et al to waive service of the summons and Order of the Honorable Mary Gordon Baker defendants instead filed a frivolous lien against the

Smith residence at 4351 Park Island Road in retaliation for my lawsuit and with intent to obstruct Justice. In my previous complaint and in this complaint, **I assert that Klinger has conspired to commit wire fraud on multiple occasions with Wolf, Webb, and Hall in 2024, 2025, and now 2026 and that those defendants controlling PIPPOA were purposely, intentionally, and deceptively defying the same documents they personally endorsed and filed on public record. These ill-gotten gains have done nothing to end the damming and diversion of Old House Creek or address the dangerous single lane causeway all rely on to access their homes but are instead used to collect and kickback funds to Hall and Parks for work on the unauthorized Parks Circle – as Wolf, Zender and their Bylaws committee unconscionably continue to make false claims to control the road so as to prevent competitive bidding and public assistance and protect Hall's job and their own standing within the racketeering enterprise. Contrary to the false assertions emanating from Wolf, Hall, Zender, et al the road was created by the two Sanders brothers decades before involvement by Boykin, Parks, Zender, and PIPPOA and is not a "common area".**

The intent of defendants' frivolous lien is to purposely retaliate against Smiths and the Smith estate and further obstruct official proceedings, conceal evidence, ignore and defy the Order of the Honorable Mary Gordon Baker and retaliate and intimidate me and my mother for refusing to fund and participate in the illegal conduct of those controlling PIPPOA. Again, this conduct and at this point the very existence of PIPPOA is a menace to the Smiths, a menace to the public trust, a menace to prospective purchasers, and a menace to the environment along Park Island Road and a menace to Waters of the United States; and prevents any good faith attempts to obtain public assistance and competent road work needed to end the damming and diversion of old house creek. Indeed a key objective of the racketeering enterprise is prevent arms length negotiations and ensure that president Hall remains on the payroll historically controlled by coconspirators Webb, Parks, and Klinger while coveting and intentionally harming the grand Smith estate for the grotesque oppressive self-aggrandizement (bullying, goonish trolling,

oppression[4], and taking of the Smiths property rights) by Boykin (now deceased) Parks, Zender and their recruits.

**Intentionally Deceptive filings on public record permeates all aspects of PIPPOA**

Intentional deception permeates all aspects of PIPPOA formed by Parks and Boykins in 1998 ostensibly to wrest the boat ramp being withheld by Boykin in violation of the 1988 C&Rs. **Deception is believed evident in the May 1, 1990[5] "Restrictions" not filed until 1994** and which were not know to Smiths as they planned and constructed their grand waterfront home and which are believed to illegally alter the terms of the boat ramp and indeed attempt to retroactively restrict the grant of the road to the land of the Smith estate evident in 1988 C&Rs. PIPPOA is little more than a racketeering enterprise repeatedly persistently filing false documents on public record, menacing the grand Smith estate, menacing the public record system, and menacing Waters of the United States. PIPPOA does not enforce its purported Covenants and Restrictions against VP Hunter, former President McCleod and Nuzum while Parks and Zender (whose homes are far less valuable than the Smith estate) assail Widow Smith and her elegant estate coveting and selectively enforcing non-existent prohibitions against her and her estate as Lt. Colonel Leslie Earl Smith lay dying from a service related disease prior to interment in Arlington aided by the Town of Meggett in their goonish predation.

The intent to deceive Smiths and the public by Boykin, Parks, and others controlling PIPPOA is evident in the unauthorized clandestine quit claim deed of 2001 for a portion of the road in front of the Smith estate (recently referenced by Wolf and his purported Bylaws committee which Diane Zender is believed to be an integral member of) which is concealed by

---

[4] With reference to the email of Shirene Hansotia and John Herms, the Honorable Court should consider that Herms who had the misfortune of living next to Zender took Zender down by the throat at a PIPPOA meeting I thankfully was not at. I ask the court to consider the threat of violence emanating from the thuggish conduct of Zender, Hall, Hunter, and Parks and their threats to interfere with access to the Smith estate emanating from Wolf's bylaws committee.

[5] Plaintiff has not seen these "restrictions" and only learned of their execution date through analysis of Webbs deed from Morris/Boykin (not McCleod Creek Associates).

Diane Zender in the 2001 minutes and which is clandestinely executed and filed without notice or membership approval under the tenure of McCleod, Zender, Parks, Nuzum and which is concealed in the minutes of Diane Zender who refers to a singular deed for the boat ramp when indeed a second deed was fraudulently filed to Parks address simultaneous with Webb succeeding Parks as treasurer – and which purposely omits the encumbrance on this road held by the land of the Smith estate as evidenced by the 1988 covenants running with the plat of the Smith estate.

The intent to deceive is evident in the 2009 filing of Jean Harrigal of the first compilation of purported PIPPOA C&Rs which are believed to fraudulently rely on the May 1, 1990 restrictions (not filed until 1994) used to illicitly and fraudulently circumvent the language of road conveyance to the land of the Smith estate in 1988 (C&Rs which exist prior to Smiths' purchase in 1989).

The intent to deceive is evident in the 2014 minutes of Jane Lesegne of a board meeting at the Jones house where according to these minutes, Boykin in the presence of Parks and Webb claims the right to prevent the development of the Bradshaw tract which he does not own and while it is falsely and deceptively asserted that only PIPPOA members would not be denied access properties along Park Island Road.

The intent to deceive is likewise evident at the 2015 meeting at Meggett town Hall believed orchestrated with the consent of Meggett personnel. I plaintiff Tracy Lynn Smith indeed attended the 2015 meeting held at Meggett town hall as my father lay dying of a service related disease and hold the good faith belief that defendants indeed covet and act with predatory intent against the Smiths and our valuable elegant, secluded, gated, 8 acre deepwater residence given that unlike the residences of Zender, Parks, Webb, Hall and others the Smith residence has never been subdivided, is far larger and more valuable (and existed many years prior to the construction of Hall, Webb, and Wolf's houses and is not part of their "Lybrand" subdivision). Still further, Webb and Wolf's support for the defiance of residential use restrictions and the transient, parasitic, non-residential key club of VP Hunter, former President McCleod and

Nuzum next to the grand Smith residence is further evidence of the intent to defy the documents recorded on public record by Zender, Parks, Webb, Hall, and Wolf.

The intent to deceive is evident in Parks 2015 letter to Smiths sent after this sham meeting at Meggett Town Hall.

The intent to deceive is evident in Zenders 2015 email and ParkIslandMajority email after this meeting.

The intent to deceive is evident in the 2017 filings of Zender and Parks (in which they intentionally deceptively include the language of Bylaw 11 and in person voting they intend to defy)

The Intent to deceive is evident in Parks email of 2018 where he again threatens selective enforcement of non-existent PIPPOA prohibitions against Widow Smith.

The intent to deceive is evident in Webbs' and Wolfs' filings on public record in 2022 (in which they intentionally deceptively include the language of Bylaw 11 and in person voting they intend to defy)

The intent to deceive is evident in Zenders communication to Dr. Robert Waters asserting the PIPPOA board has committed honest mistakes but can defy the recorded documents at will.

The intent to deceive is evident in Halls' and Wolfs' filing of 2025 (in which they intentionally deceptively include the language of Bylaw 11 and in person voting they intend to defy)

This frivolous lien involves the same dispute raised in my complaint which defendants have failed to ever address – that defendants routinely (and indeed it appears since inception) have repeatedly knowingly filed falsified documents on public record at Charleston County Recorder of Deeds with no intent to abide by these purported Bylaws, Covenants, and Restrictions and indeed with intent to deceive Smiths, the public, and other unsuspecting purchasers of property along Park Island Road of their true intent: to defy the specific provisions

in these documents whenever it suits them. Defendants intentionally, repeatedly falsify these documents while withholding any explanation of any authority to falsify these documents from the Smiths and the purported PIPPOA membership (while also concealing the existence of purported PIPPOA board meetings). Indeed, Defendants conduct meetings without notice, without providing minutes, and without even admitting the existence of these clandestine meetings where their scheme of racketeering, kickbacks, mail and wire fraud are hatched and executed under predatory, "mob rule" of the self-proclaimed ParkIslandMajority@Gmail.com.

The Court should note that the damming and diversion of Old House Creek continues without any comment from Defendants as does the repeated filings of knowingly falsified documents by Diane Zender and Prentiss Parks 2017, Sally Webb and Jim Wolf 2022, Karl Hall and Jim Wolf 2025 and now by new PIPPOA collection agent Derek Dean. I assert that it has never been the intent of those controlling PIPPOA to abide by the bylaws, covenants or restrictions filed on public record and always been the predatory intent of those imposing PIPPOA on the Smiths to take property and property rights from the grand waterfront Smith estate.

**A. The RICO Predicate Act Framework**

49. 18 U.S.C. § 1961(1)(B) defines "racketeering activity" to include any act indictable under the following specific provisions of Title 18, United States Code, among others expressly enumerated by Congress including, but not limited to:

| Statute | Offense | RICO Predicate Status |
|---|---|---|
| 18 U.S.C. § 1503 | Obstruction of justice | RICO predicate — § 1961(1)(B) |

| Statute | Offense | RICO Predicate Status |
|---|---|---|
| 18 U.S.C. § 1512 | Tampering with a witness, victim, or informant (including § 1512(b)) | RICO predicate — § 1961(1)(B) |
| 18 U.S.C. § 1513 | Retaliating against a witness, victim, or informant | RICO predicate — § 1961(1)(B) |
| 18 U.S.C. § 1341 | Mail fraud (including electronic ROD filings transmitted via U.S. mail) | RICO predicate — § 1961(1)(B) |
| 18 U.S.C. § 1343 | Wire fraud (including electronic communications and electronic ROD filings) | RICO predicate — § 1961(1)(B) |

**B. The New RICO Predicate Acts**

50. The following new and independent RICO predicate acts arise from Defendants' retaliation and as they refuse to honor the Order of Honorable Mary Gordon Baker I provided them.

**NEW PREDICATE ACT 1:** Violation of 18 U.S.C. § 1513(b)(1) — Hall's participation in the decision, planning, authorization, or execution of the Retaliatory Lien filing against the Smith Residence at 4351 Park Island Road, Meggett, SC 29449, in retaliation for Plaintiffs' initiation of this official proceeding in the United States District Court. RICO predicate: § 1961(1)(B).

**NEW PREDICATE ACT 2:** Violation of 18 U.S.C. § 1513(b)(1) — Webb's participation in the decision, planning, authorization, or execution of the Retaliatory Lien filing. RICO predicate: § 1961(1)(B).

**NEW PREDICATE ACT 5:** Violation of 18 U.S.C. § 1513(b)(1) — Klingers's participation in the decision, planning, authorization, or execution of the Retaliatory Lien filing. RICO predicate: § 1961(1)(B).

**NEW PREDICATE ACT 6:** Violation of 18 U.S.C. § 1513(f) — The agreement and conspiracy among all participating Defendants to authorize and file the Retaliatory Lien in retaliation for Plaintiffs' initiation of this official proceeding. Each conspirator is subject to the same penalty as the principal: RICO predicate: § 1961(1)(B). *See Salinas v. United States*, 522 U.S. 52, 65 (1997).

**NEW PREDICATE ACT 9:** Violation of 18 U.S.C. § 1341 (mail fraud) — Transmission through the United States mail of any document, notice, communication, or coordination among Defendants in furtherance of the scheme to file the Retaliatory Lien or to coordinate the refusal of service, including but not limited to any written correspondence among Defendants regarding the lien or service refusal. RICO predicate: § 1961(1)(B).

**NEW PREDICATE ACT 10:** Violation of 18 U.S.C. § 1343 (wire fraud) — Electronic communications, transmission through the wires, emails, text messages, or electronic submissions or retrievals through the Register of Deeds' electronic filing systems used to prepare, authorize, communicate, execute, or record the Retaliatory Lien, or to coordinate Defendants' simultaneous refusal of service. RICO predicate: § 1961(1)(B).

*[NOTE: Plaintiff will hand deliver dozens of pages of specific documents, dates, actors, instrument numbers, and additional factual details including photographic evidence to the court along with a more complete affidavit in a matter of days .]*

**C. The Continuity Analysis**

51. The Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) established that open-ended RICO continuity is satisfied where the evidence demonstrates: (1) a threat of continued illicit activity by the enterprise; (2) conduct that is part of the enterprise's ongoing regular way of doing business; and (3) a distinct threat of long-term racketeering activity, including where the predicate acts indicate the likelihood of continued illegal activity. 492 U.S. at 242-43. Each prong is satisfied here:

**PRONG 1 — "THREAT OF CONTINUED ILLEGAL ACTIVITY"**

52. The Retaliatory Lien is demonstrably not the final act of this enterprise. It is not the concluding step in a completed fraudulent scheme. It is an ongoing act — the lien remains on the public record as of the date of this filing, causing continuous and compounding harm to the Smith estate. Additionally: (a) the illegal damming of Old House Creek continues as of the date of this filing, generating new federal violations with each passing day and eating away at the protective marshes; (b) PIPPOA funds continue to be diverted and kicked back to Hall and Parks' private benefit; and (c) Defendants have demonstrated, through the filing of the Retaliatory Lien, that their preferred response to my complaint is not a reasoned response — but retaliation, obstruction, and escalation. There is no signal anywhere in the record that this enterprise intends to cease its illicit conduct. Every available signal points to defendants intent to harm Smiths, harm the public, and harm the environment for petty private gain of Hall, et al.

**PRONG 2 — "PART OF AN ONGOING ENTITY'S REGULAR WAY OF DOING BUSINESS"**

53. The Retaliatory Lien fits seamlessly and naturally into PIPPOA's established, documented, multi-year pattern of using legal instruments — HOA governance documents, Register of Deeds

filings, liens, CC&R interpretations — as deceptive weapons against property owners who challenge the defiance of recorded documents or refuse to acquiesce in defendants coordinated and predatory misconduct. The Retaliatory Lien is not an anomaly or an isolated departure from otherwise lawful conduct. It is the next logical, predictable, escalating step in the same pattern of conduct that began with the fraudulent recording of PIPPOA's governance documents and has continued through every subsequent act of misconduct alleged in the Complaint. This is how Parks' PIPPOA and its leadership operate. The stated purpose to promote "harmonious" living is a sham recorded to establish a venue for coercion, arm twisting, and indeed indoctrination of initially unsuspecting recruits into the long running pattern of conspiracy and racketeering, predatory offenses, and environmental destruction.

**PRONG 3 — "DISTINCT THREAT OF LONG-TERM RACKETEERING ACTIVITY"**

54. The Supreme Court's requirement of a "distinct threat of long-term racketeering activity" is met in the most direct and literal way possible by the facts of this case. Defendants have made explicit, by their own conduct, that they view this federal litigation as a threat to be neutralized even through illegal means — not a legal challenge to be addressed through reasonable response. Defendants who respond to federal lawsuits with such retaliation rather than legal defenses are defendants who intend to continue their deceptive conduct and racketeering enterprise indefinitely until compelled to stop by judicial force. No RICO defendant could more vividly demonstrate the "distinct threat of long-term racketeering activity" that *H.J. Inc.* requires than a defendant who responds to being sued in federal court by ignoring a Federal Court Order and Summons and instead filing a frivolous, retaliatory lien against a plaintiff's residence.

**SECTION I — PARTIES**

1. Plaintiff TRACY SMITH is an adult individual and citizen of the State of South Carolina. He is the son of Billie Jean Sutton Smith, and resident of 4351 Park Island Road, Meggett, South Carolina 29449, where he serves as the long-term Caretaker of the Smith Property. He has personal, firsthand knowledge of the Smith Property, its history, the Road at issue, Old House Creek, and Defendants' conduct described herein. I still remember the barge that sat on our property at no extra charge.

2. Defendant Karl HALL is an individual who, upon information and belief, serves or has served as long time president of said PIPPOA for many years, director, or member of the governing board of the purported PIPPOA, and who participated in the fraudulent scheme described herein and has been paid for substandard work on the substandard road by long time treasurer Webb (now succeeded by Klinger) and who lives on the lot next to Webb as this lot was subdivided into multiple lots as part of the Lybrand subdivision (unlike the large 8 acre waterfront lot of the Smiths never subdivided and existing long before the Lybrand subdivision).

3. Defendant Mellie Klinger is believed to be the treasurer of PIPPOA, does not reside on Park Island nor at the address of the Vacant boat ramp and is an individual who has collected funds from Tracy Smith from his home in Dry Prong, LA asserting in writing that the Bylaws were enforceable because they were recorded - even as the clear text presented her shows defiance of Bylaw 11 and the in person voting requirements – to which she offers no explanation.

3. PIPPOA (Park Island Property Owners Association) is purported to be a nonprofit corporation purportedly organized and existing under the laws of the State of South Carolina, purportedly governed by the South Carolina Nonprofit Corporation Act, S.C. Code § 33-31-101 et seq. "PIPPOA" has filed and recorded instruments at the Charleston County Register of Deeds purporting to affect the Smith Property and surrounding lands and claims a vacant boat ramp as its address for legal service.

5. Sally WEBB is an individual who, upon information and belief, serves or has served as long time treasur officer, director, or member of the governing board of PIPPOA, and who

participated in the fraudulent scheme described herein. She purportedly did not purchase from McCleod Creek Associates but from Morris with Boykin signing under POA. Her deed contains extraordinary language and reference to the purported May 1, 1990 covenants not recorded until 1994 – as Smiths without knowledge of this document built an expensive waterfront home now worth approximately 4 million dollars on an undivided 8 acre tract purchase from Boykin/McCleod Creek Associates. She is believed now registered agent and **did confess that the road quit claim deed from Boykin to Parks address in 2001 had no record of authorization and no record that the funds were disbursed from the PIPPOA treasury after considerable cajoling by plaintiff Tracy Smith where Smith asked if she was claiming attorney client privilege with Hill.**

6. Diane ZENDER is an individual who, upon information and belief, served as an officer, director, or member of the governing board of PIPPOA, and who has participated in the fraudulent scheme described herein and is believed to have exerted undue influence on Boykin.

7. Prentiss PARKS is an individual who, upon information and belief, drafted the documents and created PIPPOA along with Boykin (now deceased) ; has served as an officer, director, or member of the governing board of PIPPOA. Defendant Parks is the direct beneficiary of the financial diversion described herein, specifically the unauthorized expenditure of PIPPOA funds on Parks' private circle driveway while the damming diversion of Old House Creek causing inundation of protective marshes continues due to the diversion of funds and false claims of road ownership.

8. McCLEOD is an individual who, upon information and belief, serves or has served as an officer, director, or member of the governing board of PIPPOA, and who participated in the fraudulent scheme described herein.

9. McCLEOD CREEK ASSOCIATIONS is an entity of unknown organizational form operating in connection with or as an affiliate of and as predecessor of PIPPOA, whose activities and false, fraudulent, claims and filings have directly harned the Smith Property and Old House Creek.

10. BOYKIN , MORRIS , and WOLF are individuals who, upon information and belief, have participated in the fraudulent scheme described herein, including the unauthorized filing of instruments at the Charleston County Register of Deeds, the damming and diversion of Old House Creek, and related conduct.

11. JOHN DOES 1–10 are individuals and entities whose identities are presently unknown to Plaintiff but whose participation in the scheme described herein will be ascertained through discovery. Plaintiffs will seek leave to amend this Complaint to add them by name when their identities become known.

12. At all times relevant herein, each Defendant acted as the agent, partner, co-conspirator, and/or alter ego of each other Defendant, and each Defendant's acts were taken within the scope of and in furtherance of the conspiracy and scheme or illegal racketeering described herein.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) based on Plaintiffs' claims arising under 18 U.S.C. §§ 1961–1968 (RICO); 33 U.S.C. § 1251 et seq. (Clean Water Act); 33 U.S.C. § 403 (Rivers and Harbors Act); and the United States Constitution, Articles I and VI.

14. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims and arise from a common nucleus of operative fact.

15. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 65.

16. Venue is proper in the Charleston Division of the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because: (a) the Smith Property is located at 4351 Park Island Road, Meggett, South Carolina 29449, in Charleston County; (b) the fraudulent instruments at issue were recorded at the Charleston County Register of Deeds; (c) Old House Creek, the federally protected Water of the United States that Defendants have illegally dammed and

diverted, is located in Charleston County, South Carolina; and (d) a substantial part of the events and omissions giving rise to the claims herein occurred in Charleston County, South Carolina.

17. Defendants are subject to personal jurisdiction in this Court because they are residents of, incorporated in, and/or conduct their activities in the State of South Carolina and Charleston County.

## ADDIITIONAL FACTUAL ALLEGATIONS

### *A. The Smith Property and Its History*

18. Billie Jean Sutton Smith is the living owner of real property located at 4351 Park Island Road, Meggett, South Carolina 29449 (the "Smith Estate"). The Smith family has owned and occupied this grand waterfront Property for decades.

19. Tracy Smith has served as the Caretaker of the Smith Property for many years since the death of his beloved father. In his capacity as Caretaker and Resident, he has personal, firsthand knowledge of the Property, the Road, Old House Creek, and the full history of the matters described herein. Tracy Smith is now trustee of the Billie Jean Sutton Smith revocable living Trust and has the General Durable POA of Widow Billie Jean Sutton Smith since shortly after the death and interment in Arlington of his father Lt. Colonel Leslie Earl Smith.

20. The Smith Property is located in a coastal area of Charleston County, South Carolina, adjacent to Old House Creek and served by a road (the "Road") that was originally created, established, and used by the public without restriction to this day by OB Sanders and Earnest Sanders (the "Sanders") well before any involvement, claim, presence, or interest by PIPPOA, Hall, Webb, Zender, Parks, McCleod, McCleod Creek Associations, Boykin, Morris, Wolf, or any of the other Defendants (collectively the "Later Parties").

### *B. The Road — Original Creation and Public Character*

21. The Road running to and from the Smith Property was created by OB Sanders and Earnest Sanders as a public access road by necessity. Despite false claims by Boykin, et al, The Road has been continuously, openly, and notoriously used as a public access road since its

original creation — a period of decades — without lawful interruption, vacation, abandonment, or lawful private conveyance to any Defendant.

22. PIPPOA does not own, has never owned, and has no lawful claim of ownership to the Road. The clandestine alleged Quit Claim Road Deed concealed by Zender in PIPPOA minutes referred to herein was never lawfully authorized nor accepted as evidenced by Webb's admission that no record of this transaction or monies paid for this road exist in the PIPPOA treasury and is yet another false intentionally deceptive document filed on public record by this racketeering enterprise. Indeed further proof that this deed is falsified is the fact that that this sham deed claims there are no encumbrances on this road – despite references in the Smith deed and other deeds and the grant "unto each lot" contained in the 1988 Covenants filed along with the plat of the land of the Smith estate. The road has never been lawfully to PIPPOA or any of the Later Parties. Any instrument filed by or on behalf of PIPPOA or the Later Parties purporting to assert ownership of, restrict access to, or encumber the Road is fraudulent, void ab initio, and without legal foundation. The road is the product of necessity of the two Sanders brothers share use and individual residences still standing along Park Island Road.

23. The Road, having been created by the Sanders as a public road and used continuously as such for decades, the Smith estate is vested with public access rights that run with the land and cannot be extinguished by PIPPOA or the Later Parties. **The Court should note that like Boykin, Hall and Zender's false claims regarding the road are motivated by their desire to earn income for substandard work on the substandard road, eliminate competition by true road professionals and DOT who could make quick work of the road and end the damming and diversion of old house creek as Hall now succeeding Boykin kowtows to Parks and construct Parks private circle drive with funds kicked back to Parks and Hall and which are sorely needed to ensure safe passage for all who rely on Park Island Road intersecting with White Point Road.**

***C. Old House Creek — A Federally Protected Water of the United States***

24. Old House Creek is a continuously flowing tidal creek located in Charleston County, South Carolina, within the ACE Basin. The Creek has a direct surface connection to the navigable tidal and coastal waters of South Carolina and constitutes a "Water of the United States" (WOTUS) within the meaning of the Clean Water Act, 33 U.S.C. § 1362(7), and as defined by the Supreme Court in Sackett v. EPA , 598 U.S. 651 (2023).

25. Old House Creek and the surrounding coastal waterways are protected under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, and Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403.

26. Any damming, diversion, impoundment, filling, or material alteration of Old House Creek requires: (a) an Individual Permit, Nationwide Permit, or Regional General Permit from the Corps under CWA Section 404; and (b) authorization from the Secretary of the Army under Section 10 of the Rivers and Harbors Act. Without such authorization, any such act constitutes a federal offense subject to civil penalties of up to $25,000 per day of violation under 33 U.S.C. § 1319(d) and penalties under 33 U.S.C. § 1319(c).

***D. The Defendants' Unauthorized Damming and Diversion of Old House Creek***

27. Upon information and belief, Defendants, acting through PIPPOA and in concert with each other, have continued the damming and diversion of Old House Creek without obtaining any Section 404 Individual Permit, Nationwide Permit, Regional General Permit, or Section 10 Rivers and Harbors Act authorization from the U.S. Army Corps of Engineers, Charleston District. Meggett personnel including Stephanie Smith will not answer questions regarding Meggett's role in authorizing the Damming and diversion of Old House Creek. Jim Wolf will not divulge who at Meggett Confirmed the deletion of item 19 of the 1988 Covenants which plaintiff asserts creates public obligations of Meggett given the substandard state of the road.

28. The unauthorized damming and diversion of Old House Creek has altered drainage patterns, tidal access, flood characteristics, and the ecological character of the Smith Property and surrounding lands, causing direct, substantial, and ongoing harm to Plaintiff and the Smith

estate. Remediation, while costly, pales in comparison to the damage being caused to Marshes on the Smith estate and all along Park Island Road.

29. The unauthorized damming and diversion of Old House Creek constitutes an ongoing federal violation. Each day of its continuance constitutes a separate violation, compounding civil penalties at up to $25,000 per day and a separate offense under the Rivers and Harbors Act, 33 U.S.C. § 403a.

***E. The Fraudulent Recording of Instruments at the Charleston County Register of Deeds***

30. Defendants Hall, Webb, Zender, Parks, Wolf, et al recorded PIPPOA's Bylaws, Covenants, & Restrictions and other instruments at the Charleston County Register of Deeds, creating the public appearance of a legitimate, member-governed association operating for the collective benefit of property owners.

31. At the time of recording, Defendants Hall, Webb, Zender, Parks, and McCleod had pre-formed the intent to defy the recorded instruments for private gain — including the diversion of PIPPOA funds to private benefit of Parks and the perpetuation of the illegal damming of Old House Creek — rendering each recorded instrument a fraudulent misrepresentation of their actual governance intent in violation of S.C. Code § 30-9-30.

32. The Bylaws require three legitimate meetings and in person voting for amendments to the Bylaws (deceptively represented as a legitimate process to protect minority interests, ensure full disclosure, and sound decision making). But Defendants purposely and repeatedly defy this contracted byLaws so as to jam through funding for Parks private circle drive to the detriment of Smiths, the public trust, and all who rely on Park Island road. **Indeed the alleged votes of 19 parties controlling 22 votes are a preordained sham illegally orchestrated by Zender, Parks, Hall, and Webb and Wolf (as evidenced in the 2025 meeting minutes and subsequent emails of Wolf) where typically less than half of the actual parties residing on Park Island vote out of fear of the type of retribution wielded against Smiths and their grand estate. Those not voting should be rightly considered "no" votes.**

33. All governance actions, amendments, financial decisions, and recorded instruments adopted or filed by Defendants under such abhorrent and illegitimate conditions and threats of violence (like between Herms and Zender) are void ab initio and should have no legal force or effect.

***F. The Financial Diversion and Kickbacks to Parks***

34. Defendants Hall, Webb, Zender, Parks, and McCleod diverted PIPPOA funds — dues and assessments paid in good faith by member property owners — away from lawful PIPPOA purposes and to the private benefit of Parks, specifically through the unauthorized expenditure of PIPPOA funds on Parks' private circle driveway, a wholly private improvement with no relationship to any legitimate purpose of ingress and egress. It appears on no plat of the McCleod Road Subdivision.

35. The unconscionable diversion of PIPPOA funds to Parks' private circle driveway constitutes: (a) a breach of the fiduciary duty of loyalty owed by PIPPOA board members to the association and its members; (b) embezzlement of association funds; (c) a kickback to a board insider and a violation of S.C. Code § 33-31-831 (conflict of interest).

36. Simultaneously, Defendants ignored and withheld PIPPOA funds required to be applied to the remediation of the illegal damming of Old House Creek while making false claims of private road ownership, ignoring and now proposing deletion of item 19 and thereby ensuring that the federal environmental violations continued and compounded — at the expense of member property owners and to Defendants' vain self-aggrandizement and petty financial gain of Boykin and now Hall.

**CLAIMS FOR RELIEF**

**CLAIM ONE**

**CIVIL RICO: 18 U.S.C. § 1962(c)**

(Against Hall, Klinger, PIPPOA)

37. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

38. Defendants Hall, Klinger, Webb, Zender, Parks, and McCleod, associated in fact through PIPPOA, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and as defined by Boyle v. United States , 556 U.S. 938 (2009): they share a common purpose (enriching themselves through fraudulent purportedly non-profit HOA governance at member property owners' expense); have relationships among themselves through shared positions of authority within PIPPOA; and have operated with sufficient longevity across multiple years and governance cycles.

39. Defendants conducted and participated in the conduct of the PIPPOA enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5), including:

(a) Mail fraud (18 U.S.C. § 1341): Transmission through the U.S. mail of PIPPOA assessment notices, governance communications, annual meeting notices, and financial statements representing that PIPPOA funds were being used for legitimate HOA purposes while those funds were being diverted to Parks' private driveway and to the perpetuation and furtherance of the damming and diversion of Old House Creek;

(b) Wire fraud (18 U.S.C. § 1343): Electronic communications demanding monies and fund transfers used to authorize, execute, and conceal the diversion of PIPPOA funds to Parks' private driveway and to coordinate the scheme among Defendants as the damming and diversion of Old House Creek continues to destroy protective marshes on the Smith estate.

(c) Fraudulent recording (18 U.S.C. §§ 1341, 1343): The recording of PIPPOA's Bylaws and CC&Rs at the Charleston County Register of Deeds through the mails and/or electronic filing

systems, with pre-formed intent to defy those instruments, constituting fraud on the public record; and

(d) Embezzlement (18 U.S.C. § 666): To the extent PIPPOA has received federal subsidies or benefits in excess of $10,000 in any one-year period, the diversion of PIPPOA funds to Parks' private driveway constitutes theft or embezzlement from a non profit organization receiving federal tax subsidies.

40. The predicate acts constitute a "pattern of racketeering activity" under H.J. Inc. v. Northwestern Bell Telephone Co. , 492 U.S. 229 (1989): they are related (sharing the common purpose of defrauding Smiths and other PIPPOA members) and continuous (operating across multiple fiscal years with open-ended continuity through the ongoing illegal damming and fund diversion).

41. Plaintiff and the Smith estate has been injured in business and property by reason of Defendants' RICO violations within the meaning of 18 U.S.C. § 1964(c), including through loss of property value, impairment of road access rights, impairment of riparian rights, and the financial harm and monies collected and diverted caused by the fraudulent governance scheme.

42. Plaintiffs are entitled to treble damages, attorneys' fees, and costs pursuant to 18 U.S.C. § 1964(c), and to injunctive relief under 18 U.S.C. § 1964(a).

**CLAIM TWO**

**CIVIL RICO CONSPIRACY: 18 U.S.C. § 1962(d)**

(Against All Defendants)

43. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

44. Defendants agreed and conspired with each other to violate 18 U.S.C. § 1962(c). Each Defendant agreed to participate in and further the RICO enterprise through the agreement to commit at least two predicate acts.

45. Each Defendant is jointly and severally liable for the acts of all co-conspirators in furtherance of the conspiracy. Salinas v. United States , 522 U.S. 52 (1997).

**CLAIM THREE**

**DECLARATORY JUDGMENT: FRAUDULENT INSTRUMENTS VOID AB INITIO**

(Against All Defendants)

(28 U.S.C. § 2201; S.C. Code § 30-9-30)

46. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

47. All instruments recorded by PIPPOA and the Later Parties at the Charleston County Register of Deeds that purport to affect the Smith Property, the Road, or Old House Creek — including all governance instruments recorded with pre-formed intent to defy their terms — are void ab initio, fraudulent, and of no legal force or effect.

48. An actual controversy exists between the parties sufficient to invoke this Court's declaratory jurisdiction under 28 U.S.C. § 2201.

49. Plaintiffs are entitled to a judicial declaration that the fraudulent instruments are void ab initio and must be stricken from the public record.

**CLAIM FOUR**

**CONTRACT CLAUSE VIOLATIONS: U.S. CONST. ART. I, § 10**

(Against Defendants in their personal and their alleged official capacity as state-sanctioned actors through PIPPOA)

50. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

51. Any claims[6] that the SC Nonprofit Corporation Act, as applied by Defendants to impair Plaintiffs' vested contractual rights embedded in the Bylaws, Covenants and Restrictions sworn to and recorded on public record at the Charleston ROD — including voting protections, minority member voting rights, and procedural safeguards — constitutes an impairment of the obligation of contracts in violation of Article I, Section 10 of the United States Constitution.

---

[6] Defendants have never disclosed by what authority they repeatedly defy the documents recorded deceptively on Public record by Parks, Zender, Hall, Webb, Harrigal, and Wolf and which Klinger references in her collection attempts across state lines claiming that the Bylaws are enforceable because they are recorded on public record even if they are not authorized pursuant to the recorded bylaws recorded on public record.

52. Any claimed public purpose fails the two-step test of Allied Structural Steel Co. v. Spannaus , 438 U.S. 234 (1978): (a) the impairment is substantial; and (b) no significant and legitimate public purpose exists — the damming of a federally protected waterway is a federal offense, the diversion of HOA funds is embezzlement, and the fraudulent recording of governance instruments is fraud on the public record. An illegal act cannot constitute a legitimate public purpose.

53. PIPPOA's status as a state-chartered and state-sanctioned entity along with the coordination, confirmation, and approvals of the road maintenance agreement (Item 19) by Meggett subjects Defendants' conduct to heightened scrutiny under United States Trust Co. v. New Jersey , 431 U.S. 1 (1977).

**CLAIM FIVE**

**CLEAN WATER ACT: 33 U.S.C. § 1344**

(Against all defendants known and unknown)

54. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

55. Defendants discharged and continue to discharge fill and/or dredged material into Old House Creek, a Water of the United States, without a permit from the U.S. Army Corps of Engineers as required by Section 404 of the Clean Water Act, 33 U.S.C. § 1344.

56. Defendants' ongoing CWA violations cause continuing, irreparable harm to the Smith Estate, to Old House Creek, to the surrounding ecosystem and marshes, and to the public, and warrant immediate injunctive relief and remediation to allow Old House Creek to flow under Park Island Road.

**CLAIM SIX**

**RIVERS AND HARBORS ACT: 33 U.S.C. § 403**

(Against all defendants known and unknown)

57. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

58. Defendants have created and continue to maintain an unauthorized obstruction to the navigable capacity of Old House Creek without authorization from the Secretary of the Army, in violation of Section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403.

59. Each week of continued violation constitutes a separate offense under 33 U.S.C. § 403a.

**CLAIM SEVEN**

**FRAUD AND FRAUDULENT RECORDING: S.C. CODE § 30-9-30**

(Against Hall, Webb, Zender, Parks, Wolf, and McCleod and others known and unknown)

60. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

61. Defendants recorded PIPPOA's Bylaws and CC&Rs at the Charleston County Register of Deeds with the pre-formed intent to defy those instruments, constituting fraud by concealment of material intent in violation of S.C. Code § 30-9-30 and South Carolina common law.

62. Each element of fraud under South Carolina law is satisfied: material misrepresentation (recording governance instruments as binding commitments while intending to defy them); knowledge of falsity; intent to deceive; reasonable reliance by Plaintiffs and member property owners; and resulting harm.

63. The fraudulent instruments are void ab initio and must be removed from the public record pursuant to S.C. Code § 30-9-30(B)(2).

**CLAIM EIGHT**

**BREACH OF FIDUCIARY DUTY**

(Against Hall, Webb, Zender, Parks, and McCleod and all defendants known and unknown)

64. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

65. As officers and directors of PIPPOA, Defendants Hall, Webb, Zender, Parks, and McCleod owed Plaintiffs and all PIPPOA members fiduciary duties of care, loyalty, and adherence to the scope of their authority under S.C. Code § 33-31-830.

66. Defendants breached all three duties by: (a) directing PIPPOA funds to Parks' private circle driveway; (b) withholding funds from Old House Creek remediation while construction Parks

unauthorized circle drive; (c) recording governance instruments with intent to defy them and deceive prospective purchasers to enable diversion and kickbacks of non-profit funds to the personal unjust gains of Parks, Hall, Zenders and their accomplices and recruits and; and (d) purposely defying Bylaw 11 and the in person voting and contractual obligation of these recorded documents – while deceiving Smiths and the public as to their true intent to defy these documents and violating the public trust.

67. Defendant Parks had a direct, undisclosed conflict of interest in the expenditure of PIPPOA funds on his private driveway, in violation of S.C. Code § 33-31-831. No disclosure was made. No recusal occurred. Indeed Parks uses PIPPOA for his personal gain to the detriment of all who rely on Park Island Road and the purported non-profit PIPPOA membership.

68. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffs and PIPPOA members have suffered direct financial harm, property damage, and impairment of rights in an amount to be determined at trial.

**CLAIM NINE**

**CIVIL CONSPIRACY**

(Against All Defendants)

69. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

70. Defendants combined and agreed among themselves to commit the unlawful acts described herein, including fraudulent recording, financial embezzlement, illegal damming of a federal waterway, and systematic impairment of Plaintiffs' constitutional and contractual rights.

71. Defendants took overt acts in furtherance of this conspiracy, including purposely recording fraudulent instruments on public record, diverting PIPPOA funds, maintaining and constructing the illegal dam on Old House Creek, and filing instruments with the Charleston County Register of Deeds purporting to affect the Smith Property and the Road.

72. As a direct and proximate result of this conspiracy, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial.

**CLAIM TEN**

**QUIET TITLE AND DECLARATORY JUDGMENT — ROAD ACCESS RIGHTS**

(Against All Defendants)

(28 U.S.C. § 2201; S.C. Code Ann. § 15-67-10 et seq. )

73. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

74. The Road was originally created, established, and dedicated to public use by OB Sanders and Earnest Sanders through the establishment of their separate independent houses still standing along Park Island Road, decades before any involvement, claim, or interest by PIPPOA or any of the Later Parties including but not limited to Parks, Zender, Webb, Wolf, Hall, McCleod, Hunter. It has been continuously and openly used as a public road since its creation and since the purchase by Smiths in 1989.

75. PIPPOA and the Later Parties have filed false instruments and a false clandestine quit claim deed purporting to assert ownership of or exclusive control over the Road. These instruments are fraudulent, void ab initio, and cloud Plaintiffs' title to and use of the Road to access their multi-million dollar residence.

76. Plaintiffs are entitled to a judgment quieting title to the Road, declaring PIPPOA and the Later Parties have no ownership claim, ordering all fraudulent instruments clouding Plaintiffs' road access rights stricken from the record, and ordering defendants[7] to cease and

---

[7] **Briefly:** Zenders, Parks, Hall, Webb and Wolf are intent on interfering with the Smith family's established road access through their purported Bylaws committee — both the prescriptive easement arising from decades of use by the Sanders Brothers to access their individual houses and the boat yard (prior to any involvement by Boykin/Parks/Zender) established the road leading to and past the land of the now multi-million dollar Smith estate. The 1988 Covenants further evidence this access through grant "unto each lot" of road access. Interference with an established easement gives rise to an action for damages and injunctive relief. Third parties who interfere with an appurtenant easement — one that runs with the land — are liable in damages and subject to injunction where they act with knowledge of the easement's existence. ***Jowers v. Hornsby*, 292 S.C. 549, 357 S.E.2d 710 (S.C. Ct. App. 1987)**

desist from their incessant attempts interfere with access to the multimillion dollar Smith estate. Wolf and Zender are not the servient estate owners — they purport to be third-party volunteers and PIPPOA proxies. *Jowers* confirms that third-party interference with an established easement is fully actionable. Wolf and Zenders have knowledge and notice of public access to the Smith estate, making them personally liable under *Jowers.* for their insidious efforts to interfere with access to the multi-million dollar Smith estate.

**SC Common Law forbids Direct Interference with an Established Easement**

***Taylor v. Lindsey*, 332 S.C. 1, 498 S.E.2d 862 (S.C. 1998) The Supreme Court of South Carolina's controlling statement on easement interference.**

Any purported servient estate owner — and any third party — has no right to block, obstruct, condition, or otherwise interfere with the dominant estate owner's established easement rights.

***Lowcountry Open Land Trust v. State*, 347 S.C. 96, 552 S.E.2d 778 (S.C. Ct. App. 2001) The injunctive relief standard for easement interference.**

A court of equity will grant a permanent injunction against interference with an established easement upon proof of: (1) a valid easement right; (2) actual or threatened interference; and (3) inadequacy of legal remedies — which is presumed for real property because each parcel of land is unique and money damages cannot restore the full use and enjoyment of road access to one's home. All three elements are satisfied. The prescriptive easement and road access is established by law. Wolf and Zender are actively interfering. Money damages cannot restore access to the Snith estate without goonish intimidation by the ParksIslandMajority@Gmail.com. A permanent injunction is warranted.

*****************

As of this writing it appears that PIPPOA is little more than front for a racketeering enterprise to prevent professional road construction and maintenance and acts to block competition for do it your selfer Hall (who has a shiny new tractor but no heavy equipment). The damming diversion of Old House Creek is unconscionable – as are the literal assaults on the Smith estate from the ParkIslandMajority@Gmail.com (even as these goons align with Hunter, McCleod, Nuzum, who operate a parasitc transient Key Club next to the large Smith residence as Webb, Wolf, Zender,

and Parks allow them to defy the "residential use" restrictions which they falsely and selectively alleged Widow Smith was violating – and which the late Judge Coker found were without merit.

Now registered agent Webb and others who do not actually maintain permanent residences along with Wolf's bylaws committee seem intent on declaring the road a common area and preventing any professional or public road assistance – and as they say nothing and do nothing about the ecological damage being caused by the damming and diversion of Old House Creek – but build Parks circle with funds needed to begin remediation of this looming disaster (just one hurricane away) but relatively easily remediated by a legitimate road construction crew at this point in time. The tax base along Park Island road is indeed now significant to cover the few hundred thousand needed to relieve the damming of Old House creek and end the destruction of the protective marshes. But yes, the false, petty profiteering and damaging claims of road ownership must come to an end. Surely Hall and Zender can find some other use for his talents and tractor. And Parks now has his circle.....

I, Plaintiff, pro se, plead and pray to this Honorable US District Court to enforce honesty, transparency, good faith, fair dealing, protection of the waters of the United States, and protection of the public recording systems and the public trust – and indeed protection of the grand home of 84 Year Old Widow Billie Jean Sutton Smith and her Son from the ParkIslandMajority and their recruits.

**SECTION V — PRAYER FOR RELIEF**

Plaintiff Tracy Smith respectfully pray that this Court enter judgment:

1. Declaring, pursuant to 28 U.S.C. § 2201, that all instruments recorded by PIPPOA and the Later Parties at the Charleston County Register of Deeds that purport to affect the Smith Property, the Road, or Old House Creek, and that were recorded with pre-formed intent to defy their terms, or are themselves the product of fraud and deceit are VOID AB INITIO and of no legal force or effect;
2. Declaring that Defendants' damming and diversion of Old House Creek violates Section 404 of the Clean Water Act, 33 U.S.C. § 1344, and Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, and ordering immediate cessation and remediation;

3. Declaring that the Smith estate holds road access rights free of any claim by Defendants or any requirement of PIPPOA Membership as the Road was created by OB Sanders and Earnest Sanders many years before involvement of Boykin, Parks, or PIPPOA and that PIPPOA and the Later Parties have no ownership interest therein or right to block the road, access to the Smith estate, or prevent competitive bidding and public assistance for road construction so as to allow waters of the United States to flow under this road and bring the road to safe specifications. (See item 19 of 1988 Covenants)
4. Declaring that the SC Nonprofit Corporation Act, as applied by Defendants to impair the vested recorded contractual and voting rights covenants and restrictions of Smiths, violates the Contract Clause of the United States Constitution, Article I, Section 10;
5. Awarding Plaintiffs treble damages pursuant to 18 U.S.C. § 1964(c) for all harm caused by Defendants' RICO violations;
6. Ordering a complete forensic accounting of all PIPPOA records and the disgorgement of all funds diverted to Parks' private circle driveway or to any other unauthorized private purpose, with recovered funds directed first to end the damming of and the remediation of Old House Creek and the damages caused by this offense.
7. Awarding Plaintiffs compensatory and punitive damages for fraud, breach of fiduciary duty, and civil conspiracy in amounts to be determined at trial and awarding Plaintiffs attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c) and applicable law; and
8. Granting such other and further relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests and demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure.

Respectfully submitted,

Tracy Lynn Smith, Plaintiff, pro se
4351 Park Island Road [Contact address]
Meggett, South Carolina 29449
Telephone: 318 233 8789
Email: SuttonTrace450x@gmail.com
Dated: September 8, 2026